UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CENTURY 21 REAL ESTATE LLC, a Delaware Limited Liability Company formerly known as Century 21 Real Estate Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>ALL PROFESSIONAL REALTY, INC., a California corporation doing business as CENTURY 21 ALL PROFESSIONAL; STEVEN M. WRIGHT, an individual; and CAROL WRIGHT, an individual,<br><br>    Defendants.<br>_____/ | NOS. CIV.  2:10-2751 WBS GGH<br>            2:10-2846 WBS GGH<br>            2:11-2497 WBS GGH<br>            CONSOLIDATED<br><br>MEMORANDUM & ORDER RE: MOTION TO STRIKE JURY DEMAND |

----oo0oo----

Century 21 Real Estate LLC ("Century 21") filed an action against All Professional Realty, Inc., Steven M. Wright,[1] and Carol Wright (collectively "All Professional") arising from

---

[1] The parties use "Steve Wright" and "Steven M. Wright." Because he is captioned as Steve Wright in the action initiated by him, the court will use Steve Wright.

1

All Professional's continued use of Century 21's trademarks following the termination of real estate brokerage franchise agreements for unpaid fees. (No. 2:10-2751.) Steve Wright, Carol Wright, and All Professional filed a related action against Century 21 arising from the franchise agreements. (No. 2:10-2846.) Century 21 filed a third action against All Professional Hawaii Realty Inc. ("All Professional Hawaii"), John Sherman, Steve Wright, and Carol Wright arising from All Professional Hawaii's allegedly wrongful use of Century 21's trademarks following the termination of another real estate brokerage franchise agreement. (No. 2:11-2497.) All three of these cases have been consolidated. Presently before the court is Century 21's motion pursuant to Federal Rule of Civil Procedure 39(a) to strike the demands for jury trial made by All Professional.

I.   Factual and Procedural Background

In 1994, Steve and Carol Wright formed All Professional, a real estate brokerage company. (Carol Wright Decl. in Opp'n to Mot. to Strike ("Carol Wright Decl.") ¶ 2 (No. 2:10-2751, Docket No. 89-1); Steve Wright Decl. in Opp'n to Mot. to Strike ("Steve Wright Decl.") ¶ 2 (No. 2:10-2751, Docket No. 89-2).) All Professional signed its first franchise agreement with Century 21 in 1994. (Carol Wright Decl. ¶ 3; Steve Wright Decl. ¶ 3; see also Steve Wright Decl. Ex. 1.)

All Professional operates multiple offices and each office is governed by a separate franchise agreement with Century 21. In November of 2005, All Professional signed three ten-year renewals of franchise agreements with Century 21 for two offices

2

in Sacramento and one office in Folsom, California.  (Garner Decl. Ex. A ("Carol Wright Dep.") Exs. 13-15 (No. 10-2751, Docket No. 76-2); see also Carol Wright Decl. ¶ 8; Steve Wright Decl. ¶ 8.)

Unlike the original franchise agreements which did not contain waivers of the right to a jury trial, (Carol Wright Decl. ¶ 3; Steve Wright Decl. ¶ 3), each of these renewals contained the following language in bold type: "**WAIVER OF JURY TRIAL, The parties waive the right to a jury trial in any action related to this Agreement or any aspect of the relationship between [All Professional], [Century 21], any guarantor and their respective successors and assigns**."  (Carol Wright Dep. Ex. 13 § 22.9, Ex. 14 § 22.9, Ex. 15 § 22.9.)  According to the Wrights, they had to sign the agreements to remain franchisees and "based on [their] long relationship with Century 21, [they] did not carefully review the franchise agreements" and "did not realize that the franchise agreements contained a waiver of [their] right to a jury trial."  (Carol Wright Decl. ¶ 8; Steve Wright Decl. ¶ 8.)

Following these renewals, the Wrights and a third individual, John Sherman, entered into a new franchise agreement with Century 21 for a Hawaii office to be run by All Professional Hawaii, a corporation formed by the Wrights and Sherman.  (Carol Wright Dep. Ex. 19.)  That agreement contained the same jury waiver provision.  (Id. Ex. 19 § 22.9.)

In Century 21 Real Estate LLC v. All Professional Realty, Inc., Case No. 2:10-2751 WBS GGH, All Professional included a demand for jury trial in its Answer.  (No. 2:10-2751, Docket No. 17.)  In Wright v. Century 21 Real Estate LLC, Case

3

1  No. 2:10-2846 WBS GGH, All Professional filed a separate demand
2  for jury trial.  (No. 2:10-2846, Docket No. 8.)  Although counsel
3  for All Professional stated at oral arguments that it had filed a
4  timely jury demand in all three consolidated cases, the court has
5  been unable to locate a jury demand in the third case.  For the
6  purposes of this motion, however, the court will assume that a
7  timely demand was filed in that case.  The same contract language
8  is at issue in all three cases and neither party has suggested
9  either that the motion to strike All Professional's jury demands
10 would not apply equally to all three proceedings or that there
11 would be any difference in the court's analysis with respect to
12 the three cases.
13        Century 21 now moves pursuant to Federal Rule of Civil
14 Procedure 39(a) to strike the demands for a jury trial.  (No.
15 2:10-2751, Docket No. 76.)
16 II.  Discussion
17        Under Rule 39(a), where a party has demanded a jury
18 trial pursuant to Rule 38, "the trial of all issues so demanded
19 shall be by jury, unless . . . the court upon motion or on its
20 own initiative finds that a right of trial by jury on some or all
21 of [the] issues does not exist under the Constitution and
22 statutes of the United States."  Fed. R. Civ. P. 39(a).[2]  This
23 rule can be used to strike a jury demand where the parties have
24 waived their rights to a trial by jury.  Mowbray v. Zumot, 536 F.

---

[2] All Professional argues that because Century 21 did not file its motion to strike until over a year after the jury demand was made, its motion should be denied as untimely pursuant to Rule 12(f).  Because Century 21 brings its motion under Rule 39(a) and not Rule 12(f), the twenty-one day time limit to which All Professional refers is irrelevant.

4

1  Supp. 2d 617, 621-22 (D. Md. 2008) (holding that it was
2  appropriate to apply Rule 39(a) to strike a jury demand pursuant
3  to a contractual waiver because once the right to a jury trial
4  had been waived, it no longer existed).
5       "Generally, the right to a jury trial in federal court
6  is governed by federal law." Fin. Tech. Partners L.P. v. FXN
7  Ltd., No. C 07-01298, 2009 WL 464762, at * 1 (N.D. Cal. Feb. 24,
8  2009) (citing Simler v. Conner, 372 U.S. 221, 221-22 (1963)).
9  Although there is a strong presumption against waiver of the
10 fundamental right to a jury trial, United States v. Cal. Mobile
11 Home Park Mgmt. Co., 107 F.3d 1374, 1378 (9th Cir. 1997), under
12 federal law, the right to a jury "may be waived by a contract
13 knowingly and voluntarily executed," Okura & Co., Inc. v. Careau
14 Grp., 783 F. Supp. 482, 488 (C.D. Cal. 1991) (citing Leasing
15 Serv. Corp. v. Crane, 804 F.2d 828, 832-33 (4th Cir. 1986)).
16      California law provides that parties may not validly
17 contract to waive their right to a jury trial before legal action
18 is initiated. Grafton Partners L.P. v. Superior Court, 36 Cal.
19 4th 944, 957-58 (2005) (determining that the California
20 Constitution and California Civil Code section 631 do not permit
21 predispute jury waivers). Citing Financial Technology, All
22 Professional urges the court to apply California law instead of
23 federal law because this proceeding is "founded in California
24 law" and California law is more protective of the right to a jury
25 trial than federal law.
26      The court in Financial Technology did apply California
27 law in determining the validity of the parties' predispute jury
28 trial waiver in part because application of California law, which

5

was more protective of the right to a jury trial, "would promote the policy underlying the rule regarding jury waivers." <u>Fin. Tech. Partners L.P.</u>, 2009 WL 464762, at *2.  It did so, however, on the basis of a California choice of law provision contained in the same agreement as the waiver.  <u>Id.</u>[3]

In relying on <u>Financial Technology</u>, All Professional ignores the key role that the choice of law provision played in the court's analysis.  Although there is a choice of law provision in the franchise agreements at issue here, it provides that New Jersey law, not California law, will govern.  (Carol Wright Dep. Ex. 13 § 22.7, Ex. 14 § 22.7, Ex. 15 § 22.7, Ex. 19 § 22.7.)  All Professional, however, fails to engage in any discussion of choice of law provisions and gives the court no indication that New Jersey law, which would be the relevant state law under <u>Financial Technology</u>, is more protective of the right

---

[3]  In deciding to enforce the choice of law provision and apply state law, the court noted the lack of authority on whether a choice of law provision should override the general presumption that federal law governs the right to a jury trial in federal court.  <u>Id.</u>  The case has not been cited by any court in support of such a proposition.
    It appears that only the Seventh Circuit, in <u>IFC Credit Corp. v. United Business & Industry Federal Credit Union</u>, 512 F.3d 989, 991, 993-94 (7th Cir. 2008), has held that when a contract is governed by state law, the validity of a jury trial waiver is similarly governed by state law.  <u>AEL Fin. LLC v. Tri-City Auto Salvage, Inc.</u>, No. 08-cv-4384, 2009 WL 3011211, at *3 (N.D. Ill. Aug. 31, 2009) (noting that the Seventh Circuit in <u>IFC Credit</u> had split from the Second, Fourth, Sixth Circuits in following state law where there was a choice of law provision).  Unlike the court in <u>Financial Technology</u>, the court in <u>IFC Credit</u> did not consider which set of laws, state or federal, was more protective of the right to a jury trial.

to a jury trial than federal law.[4]  Accordingly, even if the court were to agree with Financial Technology that when a contract contains both a jury waiver and a choice of law provision, the law selected by the parties governs questions of enforceability so long as it is more protective of the right to a jury than federal law, All Professional has not shown why California law should apply here.

Under federal law, "[t]he factors consistently used by courts to determine whether a [jury trial] waiver was knowing, voluntary, and intelligent," and therefore enforceable, include: "(1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous." Breham v. Asset Acceptance, LLC, No. CV-09-1474-PHX-GMS, 2010 WL 1735147, at *2 (D. Ariz. Apr. 28, 2010) (citing Phoenix Leasing Inc. v. Sure Broad., 843 F. Supp. 1379, 1384 (D. Nev. 1994)); see also MZ Ventures LLC v. Mitsubishi Motor Sales of Am. Inc., No. CV9902395 DDP, 1999 WL 33597219, at *15 (C.D. Cal. Aug. 31, 1999) (listing the same factors).  There is disagreement between circuits with respect to which party bears the burden of proving these factors, Breham, 2010 WL 1735147, at *2, but the cases from this circuit

---

[4] Justice Chin, concurring in Grafton Partners, noted that in announcing a rule against predispute jury waivers, California was "out of step with the authority in other state and federal jurisdictions" and that only Georgia joined California in refusing to enforce such provisions. Grafton Partners, 36 Cal. 4th at 493 (concurrence).  Thus it does not appear that New Jersey would follow California's lead even if New Jersey law were to be applicable.

7

that the court has been able to locate have uniformly placed the burden on the party seeking to enforce the waiver. See id.; MZ Ventures LLC, 1999 WL 33597219, at *15; Phoenix Leasing, 843 F. Supp. at 1384.[5]

First, as to whether there was a gross disparity in bargaining power between the parties, it is not required that the parties stand on precisely equal footing. Phoenix Leasing, 843 F. Supp. at 1385 (noting that while the facts in that case demonstrated that there "was some inequality of bargaining power," it was not "of the kind or degree necessary to invalidate the waiver provision"); see also Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc., 56 F. Supp. 2d 694, 709 (E.D. La. 1999) ("To invalidate a waiver provision, however, the bargaining differential must be the kind of 'extreme bargaining disadvantage' or 'gross disparity in bargaining position' that occurs only in certain exceptional situations."). If any degree of inequality in bargaining power was enough to invalidate a waiver, it would be rare that a waiver could ever be enforced.

Here, there is nothing to suggest that there was a disparity in bargaining power dramatic enough to cast doubt on the validity of the waiver. In deposition testimony produced by Century 21, Steve Wright stated that at the time that All Professional renewed its agreements with Century 21, it was entertaining competing offers from other franchises who were "all willing to do things at or better than what Century 21 initially

---

[5] Because the court finds below that Century 21 has met its burden, if the court were to place the burden on All Professional, the outcome would not change.

8

1  offered to us," and that All Professional was ready to end its
2  relationship with Century 21 if it did not agree to grant the
3  Wrights permission to open a Hawaii office.  (Garner Decl. Ex. B
4  ("Steve Wright Dep.") at 48:11-24, 51:6-16, 69:11-70:18.)
5  Although Century 21 was initially unwilling to discuss the
6  possibility of a Hawaii franchise, after several months of
7  negotiations All Professional was ultimately able to persuade
8  Century 21 to enter into a new franchise agreement for a Hawaii
9  office shortly after the renewals were signed.  (Id. at 48:11-
10 51:16; Carol Wright Dep. Ex. 19.)

11         All Professional now argues that it "needed and wanted"
12 to renew with Century 21 in order to retain the goodwill and name
13 recognition associated with its three California offices that it
14 had built under the Century 21 banner and that it was "desperate"
15 to open a Hawaii franchise.  (Pls.' Opp'n to Mot. to Strike at
16 9:22, 25).  It does not explain, however, why retaining goodwill
17 and name recognition or opening a Hawaii office were so important
18 or necessary that either factor would cause a gross disparity in
19 power between All Professional and Century 21.  Certainly, the
20 deposition testimony of Steve Wright does not suggest that a
21 failure to renew would have had severe financial consequences for
22 All Professional.  When directly asked if there was any
23 "financial constraint on [his] end if the Franchise Agreements
24 had not been renewed in California," he responded that All
25 Professional "would not have suffered if we hadn't renewed."
26 (Steve Wright Dep. at 70:13-18.)

27         Nothing alleged by All Professional distinguishes the
28 power balance in this case from typical negotiations between a

9

franchise and franchisee, and multiple district courts have upheld jury trial waivers contained in such agreements. Dunkin' Donuts Franchised Rests. LLC v. Manassas Donut Inc., No. 1:07cv446 (JCC), 2008 WL 110474, at *2 (E.D. Va. Jan. 8, 2008) ("Courts have found waivers knowing and voluntary even in the context of franchise agreements, where contractual terms are often non-negotiable and where there may be a slight disparity of bargaining power between the parties." (citing cases upholding jury waivers in franchise agreements)); Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc., No. 06-cv-01212-WYD-BNB, 2007 WL 4268962, at *7 (D. Colo. Nov. 30, 2007) (citing cases).  The specific facts in this case further suggest that both parties enjoyed some leverage during their negotiations, and so this first factor weighs in favor of finding a voluntary and knowing waiver.

        The second factor considered in determining whether a waiver is voluntary and knowing is the business or professional experience of the parties opposing the waiver.  Steve Wright has a college degree and has one year of coursework towards a Masters in Business Administration, (Steve Wright Dep. at 12:8-13:11), and Carol Wright has two years of collegiate education, (Carol Wright Dep. at 13:14-19).  Both of the Wrights hold real estate licenses and have over ten years of business experience running All Professional, (Carol Wright Dep. at 13:14-14:23; Steve Wright Dep. at 13:13-14:10), which is a substantial business with approximately $2.5 million in annual gross revenues, (Rudin Decl. Ex. B ("Carol Wright Dep. II") at 69:22-25 (No. 2:10-2751, Docket No. 90-1); id. Ex. A ("Steve Wright Dep. II") at 73:11-17 (No.

10

2:10-2751, Docket No. 90-1)).  In the course of their dealings with Century 21, they have signed multiple franchise agreements and addendums.

Courts have held that parties with similar backgrounds were sufficiently experienced in determining whether a jury waiver was knowing and voluntary.  See, e.g., Bakrac, Inc. v. Villager Franchise Sys., Inc., 164 Fed. App'x 820, 824 (11th Cir. 2006) (college educated mechanical engineer with eleven years experience as a hotel operator); Dunkin' Donuts Franchised Rests., 2008 WL 110474, at *3 (experienced franchisee); Rocky Mountain Chocolate Factory, Inc., 2007 WL 4268962, at * 7 (defendant who had run several businesses including a real estate company and two licensed gyms).  The provision here clearly stated that the parties to the agreement waived their right to a jury trial and the Wrights' education and business experience suggest that they would have understood the impact of the waiver.  This factor therefore weighs in favor of finding the waiver enforceable.

With respect to the third factor, ability to negotiate, although the Wrights state that they were unable to negotiate the terms of their agreements with Century 21, Century 21 has produced evidence that All Professional made multiple changes to the terms of the franchise agreements over the years.  Some changes, such as changes to the trade name under which All Professional would operate or the effective date of the agreement, (Carol Wright Dep. Ex. 1 at 1, 2), might be classified as insubstantial.  Other changes, though, were to material provisions, including a 2007 addendum in which All Professional

11

rejected a number of provisions that it felt were attempts by Century 21 to "enhance" its contract with All Professional, (Steve Wright Dep. II at 114:17-115:25, Rudin Decl. Ex. D). Century 21 has therefore shown that All Professional had the ability to negotiate some terms of the franchise agreements. This factor therefore supports the enforceability of the waiver.

The fourth factor, conspicuousness of the waiver, likewise supports enforceability. The waiver provision was in a font the same size as the rest of the Agreement and, furthermore, the provision was clearly labeled in full capital letters as "**WAIVER OF JURY TRIAL**" and the entire provision was in bold print, unlike the surrounding terms. See Phase II Chin, LLC v. Forum Shops, LLC, No. 2:08-CV-162 JCM, 2010 WL 3463684, at *1 (D. Nev. Aug. 30, 2010) (waiver provision had its "own conspicuous, underlined subject heading"); Breham, 2010 WL 1735147, at *2 (waiver in "all capital letters, bolded, and clearly labeled 'Jury Trial Waiver'" was conspicuous); Phoenix Leasing Inc., 843 F. Supp. at 1384 ("The waiver clause was not inconspicuous. The waiver clause was printed in capital letters, whereas most of the other provisions were printed in lower case. In addition, the waiver clause is the only material contractual clause appearing on the signature page and is located directly above the signature line."). All four factors discussed by the parties, therefore, weigh in favor of finding the waiver voluntary and knowing.

Finally, despite a provision in each agreement representing that All Professional's officers, directors, and shareholders had "fully read this Agreement," (Carol Wright Dep. Ex. 13 § 23.10, Ex. 14 § 23.10, Ex. 15 § 23.10, Ex. 19 § 23.10),

the Wrights claim that they neglected to "carefully review" the renewal agreements before signing them and state that because of this failure, they were unaware that the renewal agreements contained a waiver of their right to a jury trial. (Carol Wright Decl. ¶ 8; Steve Wright Decl. ¶ 8.) Similarly, All Professional did not consult an attorney when renewing its agreements, although in signing the agreement, All Professional represented that it had "full opportunity to . . . be thoroughly advised of the terms and conditions of this Agreement by counsel of your choice." (Carol Wright Dep. Ex. 13 § 22.14, Ex. 14 § 22.14, Ex. 15 § 22.14, Ex. 19 § 22.14.)

These failures to read the contract and hire an attorney were risks that All Professional appears to have freely decided to bear. There may have been good reasons for making these decisions--hiring an attorney, for example, can be an expensive proposition and the Wrights on behalf of All Professional may have decided that it was unnecessary to make such an expenditure. In other cases where parties seeking to invalidate a jury trial waiver made similar arguments, courts have nonetheless found the waivers enforceable. JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc., No. H-10-1358, 2012 WL 201533, at *3 (S.D. Tex. Jan. 23, 2012) (where sophisticated defendant read the agreement and had opportunity to have legal counsel review the agreement but opted not to do so, waiver was voluntary and knowing); PostNet Int'l Franchise Corp. v. Amercis Int'l, Inc., No. 06-CV-00125-PSF-BNB, 2006 WL 1775599, at *3 (D. Colo. June 26, 2006) (where a sophisticated franchisee did not consult with an attorney but had the opportunity to do so,

13

conspicuous jury waiver was enforceable); Westside-Marrero Jeep Eagle, Inc., 56 F. Supp. 2d at 708 (waiver upheld where experienced businesspeople signed a contract despite the fact that they did not understand the contract because "experienced business people . . . can be presumed to understand the importance of reading contracts before signing them").

In the agreements, Century 21 required parties to read the terms of the agreements and to confirm that they had the opportunity to consult an attorney. All Professional has not produced evidence showing, or even argued, that Century 21 did anything to discourage them from reading the terms of the agreement or obtaining advice of counsel. Nor has All Professional presented the court with any authority for the proposition that where a party has the opportunity to read a contract and consult an attorney but decides not to do so, either of those omissions provides sufficient grounds to find a waiver unenforceable. Accordingly, the court will not invalidate the waiver provision on these grounds.

IT IS THEREFORE ORDERED that Century 21's motion to strike All Professional, Steve Wright, and Carol Wright's jury demands be, and the same hereby is, GRANTED.

DATED: July 3, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE